**MEMO ENDORSED**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3035

WRITER'S DIRECT FACSIMILE
(212) 492-0035

WRITER'S DIRECT E-MAIL ADDRESS
rtarlowe@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
JOHN F. BAUGHMAN
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
ROBERT BRITTON
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
DAVID CARMONA
JEANETTE K. CHAN
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
MARTIN FLUMENBAUM
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE
JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
DAVID M. KLEIN
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KANNON K. SHANMUGAM*
DAVID R. SICULAR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
CONRAD VAN LOGGERENBERG
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

April 23, 2019

**BY EMAIL / ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

            *United States* v. *Anilesh Ahuja, et al.*,
            S1 18 Cr. 328 (KPF)

Dear Judge Failla:

        As Your Honor is by now aware, less than a week after having informed the defense and the Court that it had no intention of superseding, the government provided the defense and the Court a Superseding Indictment yesterday. Between last week's conference and yesterday, and despite repeated requests from the defense for an explanation as to whether the description of sector spreads in the original Indictment was accurate, the government repeatedly refused to provide this basic information, claiming it was "considering" the issue when, in fact, it had apparently determined that the Indictment was incorrect and was seeking to supersede.

        The Superseding Indictment, which purports to reflect the government's "more developed understanding of how sector spreads work[]," significantly affects the government's case, and raises questions about the accuracy of information that was presented to the grand jury (or grand juries) that returned the two indictments. Among other issues, the new Indictment (a) makes material changes to one of the government's theories of the case; and (b) confirms that the original Indictment contained a significant

1

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

error as to a material fact. These last-minute substantive changes to the Indictment are unfortunately consistent with the government's unwillingness (or inability) to commit to a consistent explanation of the particular method or methods alleged to have been used in the claimed over-marking of securities. That failure has prejudiced the defendants' efforts to understand the government's case, mount a defense, and prepare for trial. For these reasons and others set out below, we respectfully request both a continuance of the June 3 trial and that the Court conduct an *in camera* inspection of relevant grand jury testimony and instructions.

A comparison of the two indictments raises at least two significant issues:

*First*, and as discussed at our last conference with the Court, the original Indictment against Mr. Ahuja contained a materially inaccurate definition and description of the term "sector spreads." While the original Indictment claimed that sector spreads reflected "the difference between the cheapest and most expensive securities within an entire sector" (Ind. ¶ 32), the new Indictment redefines sector spreads as "generally intended to take into account the differences between the bid and the ask for prices for all of the securities within an entire sector." (Superseding Ind. ¶ 32.) The term "sector spreads" is not used casually in either of the two indictments. Rather, both indictments contain entire sections on the use of sector spreads and identify them as the vehicle for one of two "related types of mismarking." (*Id.* ¶ 24; Ind. ¶ 24.) For this reason, the use of the term—and its implications on the number of marks at issue in this case—has been debated for months. The change to the definition reflected in the Superseding Indictment is especially significant because the definition in the original Indictment suggested that sector spreads by their very nature resulted in inflated marks. (*See* Ind. ¶ 32 (alleging that a sector spread *necessarily* resulted in a price that was "at least as large (and almost certainly significantly larger)" than the security-specific spread).)

*Second*, the new Indictment strategically strikes the word "corrupt" from its description of "brokers" who provided sector spreads. While the original Indictment alleged that the defendants obtained "sector spreads" from "corrupt brokers," the new Indictment alleges only that sector spreads came from "brokers," allowing for an allegation—first expressed last week—that inflated sector spreads were also provided by "non-corrupt brokers." The government attempted to justify this change by claiming that sector spreads provided by non-corrupt brokers were just a "subspecies" of what was alleged in the Indictment. (April 16, 2019 Hearing Tr. at 59:13–14.) But *non-corrupt* brokers cannot possibly be a "subspecies" of *corrupt* brokers; the two categories are by definition mutually exclusive. The deletion of the word "corrupt" substantially expands the universe of allegedly inflated sector spreads at issue: while there are only two individual brokers on the government's list of co-conspirators, there are more than ten different broker-dealers that provided sector spreads to PPI during the time period alleged for the conspiracy.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

These changes are plainly material, and they require additional time to investigate and defend.[1] Among other things, the changes give rise to an allegation, never expressed before last week's conference, that sector spreads obtained from legitimate brokers could still be fraudulent if the legitimate brokers did not know the spreads would be used to value securities. (*See* April 16, 2019 Hearing Tr. at 38:24–40:22.) Prior to that date (and prior to this change), the defense reasonably relied on the very specific use of the word "corrupt" in assuming that the only inflated sector spreads at issue in this part of the scheme came from one of two corrupt brokers. Now, six weeks before trial, we are being told that *any* of the newly-defined sector spreads, regardless of where they were obtained, could be corrupt. The result is that the universe of spreads and quotes that the defense has worked so hard (with limited results) to narrow has been expanded. Had the defense known of the government's new allegations early on, rather than less than 6 weeks before trial, we could, at the very least, have requested, obtained, and evaluated discovery from the more than ten broker-dealers who provided spreads to the firm. The government thus far has provided no discovery from many of those brokers, and we are left with no meaningful opportunity to obtain and analyze that information on our own.

The government's April 22, 2019 disclosure, which we are still in the process of reviewing, appears to contain additional mistakes, and does nothing to clear up the confusion. Specifically, yesterday's disclosure provides additional information regarding allegedly fraudulent monthly marks: specifically, the mode of mismarking and the identity of the broker that provided the quote allegedly used to inflate the value of the relevant security. But the only three broker-dealers identified are those that employed the two individuals on the government's list of alleged co-conspirators. That means that the monthly marks that were purportedly inflated through the provision of sector spreads by "unwitting" brokers still have not been identified. Last night's disclosure also does not indicate whether, despite the material change in the Superseding Indictment's explanation of a sector spread, the government still intends to pursue its theory—articulated to the Court—that the use of sector spreads is "per se" unlawful.

Without a continuance, and under the circumstances of this case, the defense would be prejudiced by yet another change (and in this case an expansion) of the theories it must now be prepared to defend against. *See United States* v. *Rojas-Contreras,* 474 U.S. 231, 236 (1985) ("The authority of the District Court to grant a . . . continuance should take care of any case in which the Government seeks a superseding indictment which operates to prejudice a defendant."); *see also United States* v. *Gloss,* No. 08 CR 823(HB), 2009 WL 161063, at *3 (S.D.N.Y. Jan. 21, 2009) (granting continuance where, among other issues, revelations in superseding indictment and regarding additional discovery materials "could

---

[1] To the extent that the government argues that the changes are not material or complicated—and therefore do not warrant the relief sought in this letter—we respectfully note that the government itself took nearly a full week to not answer the question posed by the Court and the government about the definition of sector spreads. *See supra* at page 1.

3

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

quite reasonably lead a defendant and his counsel to rethink their theories of defense" and finding "they should . . . be allowed sufficient time to make such informed decisions").

Moreover, and in any event, the government's changes raise questions about the accuracy of information provided to one or more grand juries and the validity of any resulting indictment. Throughout last week, and until yesterday, the government had been either unable or unwilling to tell us or the Court whether the definition of sector spreads provided in the Indictment (and by implication to the grand jury) was correct. (April 16, 2019 Hearing Tr. at 68:14–74:10.) We now know it was not.

At our conference last Tuesday, the Court asked the government whether its description of sector spreads in the Indictment was correct, and the government stated that it preferred not to answer off the cuff. (*Id*. at 73:21–24.) The defense, and perhaps the Court, expected the government to provide a response promptly thereafter. When the issue was not addressed at the continued conference the next day, we asked the government again on Wednesday whether it stood by the language in the Indictment and whether it intended to supersede. On Thursday, the government replied that it was "focused on" completing the CUSIP-related disclosure, was still "considering" the question, and would let us know once it had "a response to share."

We followed up again to ask whether—putting aside the question of what steps it may take to try to remedy the issue—it could simply tell us whether the "description of sector spreads in [paragraph 32 of the Indictment] is correct or not." The government replied that it was "considering" the question and would "likely" get back to us "by Monday." The next communication we received from the government on this issue was when we were provided a copy of the Superseding Indictment on Monday.

As noted above, the government, in explaining its new Indictment, has informed us that the new definition "reflects [the government's] more developed understanding of how sector spreads worked in this case." The careful choice of words aside, the two descriptions of sector spreads are irreconcilable. If the new definition is accurate, the old one is not, raising questions about what a grand jury was told (both as a matter of fact and in being instructed on the law) about the nature and use of sector spreads. It also raises questions about the source of the original, inaccurate information, in that the grand jury presumably relied on witness testimony, and not the *government's* understanding of sector spreads, in making its decisions.

We do not know whether the new Indictment was returned by the same grand jury that returned the original Indictment, or what (if anything) the grand jury was told about the accuracy of prior testimony or instructions. What we know for certain—or at least can fairly assume—is that at some point a grand jury was given materially inaccurate testimony, an incorrect description of the law, or both.

Under the circumstances, the government should be directed to provide the relevant grand jury transcripts to the Court for an *in camera* review. *See United States* v. *Twersky,* No. S2 92 Cr. 1082 (SWK), 1994 WL 319367, at *5 (S.D.N.Y. June 29, 1994)

4

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

(finding *in camera* review of the grand jury minutes warranted to determine what legal instructions, if any, the grand jury received); *see also United States* v. *Eldridge*, No. 09–CR–329, 2014 WL 257224, at *4 (W.D.N.Y. Jan. 23, 2014) (granting *in camera* review of grand jury transcripts to determine the effect of false grand jury testimony); *United States* v. *Garcia*, No. 94 Cr. 1003 (LMM), 1996 WL 51197, at *2 (S.D.N.Y. Feb. 8, 1996) (directing the government to submit to the Court, for *ex parte* and *in camera* inspection, a copy of all testimony given to the grand jury regarding the defendant).

For these reasons, we respectfully request (a) a continuance of the June 3 trial date and (b) that the government be directed to produce relevant grand jury transcripts to the Court for *in camera* review.

Respectfully submitted,

Roberto Finzi
Richard C. Tarlowe

cc:   Counsel of Record

The Court is in receipt of Defendant's letter, dated April 23, 2019. The Government shall submit a letter in response before April 26, 2019, at 5:00 p.m.  While the application is pending, the parties should proceed under the impression that the trial will move forward on June 3, 2019.

Dated: April 23, 2019
       New York, New York

SO ORDERED.

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE

5