# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

June 1, 2019

Daniel Ruzumna
Partner
(212) 336-2034
Direct Fax (212) 336-1205
druzumna@pbwt.com

**By ECF**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

>    Re:   *United States v. Ahuja, et al.,*
>            <u>18 Cr. 328 (KPF)</u>

Dear Judge Failla:

    As directed by Your Honor this morning, we write to identify those portions of recorded conversations between defendant Jeremy Shor and others at Premium Point Investments ("PPI") that we may seek to offer in evidence or otherwise use at the upcoming trial. This letter identifies the relevant portions of the conversations and the circumstances and manner in which we would seek to use them.

    Mindful of the Court's guidance to winnow the portions of recordings to be used at trial, we are narrowing our request.  The only recording that we would affirmatively seek to play at trial is the December 15, 2015 conversation between Mr. Shor and PPI's Chief Compliance Officer, Evan Jay, and we only seek to play certain portions of that conversation. We have attached as Exhibit A hereto a transcript of that conversation and have highlighted in yellow the portions that we may seek to play for the jury.

    There are a five other recordings that Mr. Shor may seek to use for a non-hearsay purpose in a very limited manner, either because they show:  (a) Mr. Shor reporting to superiors who were responsible for estimating and informing investors of PPI's month-end valuations and/or on the Valuation Committee that he was trading bonds below the level at which they were then marked; or (b) Mr. Majidi directing Mr. Shor not to reflect a loss in his daily reporting of profits and losses.  But instead of playing these recordings, we seek permission to ask Mr. Majidi, who participated in all relevant conversations, whether in fact Mr. Shor made the statement (not for its truth but for the fact that it was made), or whether Mr. Majidi gave such command.  If Mr. Majidi acknowledges the statements, we would not seek to play the recordings.  If, however, he disagrees or states that he does not remember such statement, we would then seek to play the statement at issue to prove that the statement was made (played to the jury) or to refresh his recollection (played only to Mr. Majidi).

    Below are the statements that we seek to use in this manner:

| Bates No. | Date | Participants | Relevant Statement | |
|---|---|---|---|---|
| SHOR0000236 | July 30, 2015 | Amin Majidi<br>Jeremy Shor | SHOR: | The market is probably like a point and a half, two back on bids. |
| SHOR0000237 | August 20, 2015 | Neelabh Baranga<br>Ashish Dole<br>Amin Majidi<br>Jeremy Shor | SHOR: | I feel like up until August, we've probably been running at like you know 2 to 3%. So, uh, a little bit, you know, a little spotty if there's been uh, you know one trade or but on the sale market value it's been you know, 2 to 3% some, some periods, a little lower throughout the year.<br>. . . .<br><br>SHOR: And uh, this last month, I would say last week, the two days, it's been up around uh, six to sev-, seven to eight. And the first two weeks, the first week or so [coughs], excuse me, of April would have been I think I'm remembering like a three to a four number. |
| SHOR0000238 | Oct. 15, 2015 | Sriram Kannan<br>Amin Majidi<br>Jeremy Shor | SHOR: | I think that, you know, when I ran through th-, their sales from their purchases, their stuff was down 5% from kind of an average purchase date of March.<br>. . . .<br><br>SHOR: [A]verage purchase date was, you know, March, and it worked out to be like minus 4.7%, which is what I think around the market it is . . . .<br><br>SHOR: I, you know, so, I think you |

| | | | | |
|---|---|---|---|---|
| | | | | know, we have high marks . . . |
| SHOR0000239 | Oct. 15, 2015 | Anilesh Ahuja<br>Amin Majidi<br>Dan Osman<br>Jeremy Shor | SHOR: | So I think it's probably uh, mid high, single digits at this point, so you know seven, eight. |
| | | | | . . . . |
| | | | SHOR: | Uh, I don't think 10%. So I did a, that's why it took me an extra couple of minutes, I think, you know, like a mid-high single digits as well. |
| SHOR0000422 | Oct. 30, 2015 | Amin Majidi<br>Jeremy Shor | MAJIDI: | How are we gonna mark it? I mean you're at month end. Um we're just gonna let the marks come in and we won't really challenge and stuff like that. The, the, the, the thing is we, we can't have the marks be that different, can you, based on – |
| | | | SHOR: | What, what do you mean, that different? |
| | | | MAJIDI: | Like, you know that – |
| | | | SHOR: | Like smooth it out so there's not twenty downs if we liquidate something? |
| | | | MAJIDI: | No, no. So, so, so like let's say we are showing down 3% on your book, right? There's a scenario where the marks come in and they're not as bad as how we mark the book, because it's kinda you're, you're trading within a point, right? So it's like, it's possible that the street is holding up marks. So we don't want it to |

|  |  |  | be the kinda thing where the marks come in and you're that differently off. |
|--|--|--|--|
|  |  |  | . . . . |
|  |  | SHOR: | Yeah, so I mean, you know, we're selling stuff down 8 or 9%, we haven't changed the other prices in the book so – |
|  |  |  | . . . . |
|  |  | SHOR: | I mean, they're down, there's no doubt they're down. |

Finally, to the extent a witness who participated in a recorded conversation testifies inconsistently with something he said in such conversation, we may seek to impeach that witness using his prior recorded statement, just as we would with any other prior inconsistent statement that was not subject to an audio recording. *See* Fed. R. Evid. 613(b). Because we cannot predict whether and how a witness will testify, we have not identified in this letter statements that we may seek to use for this purpose. If the Court believes that advance notification of such impeachment is appropriate, we will identify at the appropriate time (*i.e.*, after such witness testifies) any recorded statement that we will seek to offer to impeach before that recorded statement is played to the jury.

We thank the Court for its time and consideration of this important issue.

Respectfully submitted,

Daniel S. Ruzumna

cc: Counsel of Record