**Patterson Belknap Webb & Tyler LLP**

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

June 9, 2019

Daniel Ruzumna
Partner
(212) 336-2034
Direct Fax (212) 336-1205
druzumna@pbwt.com

**By ECF**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

      Re:    *United States v. Ahuja, et al.*,
              <u>18 Cr. 328 (KPF)</u>

Dear Judge Failla:

      We respectfully write on behalf of defendant Jeremy Shor to advise the Court that we may seek to introduce at trial testimony and evidence concerning what appear to be the Government's efforts to influence the guilty plea allocutions of cooperating witnesses Amin Majidi and Frank Dinucci in a manner designed to eliminate exculpatory information for Mr. Shor and to avoid impeachment information regarding these witnesses. As Your Honor has recognized, the proposed plea allocution that Mr. Majidi's counsel forwarded to the Government for review should have been disclosed previously under *United States v. Triumph Capital Group, Inc.*, 544 F.3d 149 (2d Cir. 2008). Indeed, the proposed allocution is materially different from that which Mr. Majidi ultimately offered in court, and the language added after Government review seems designed to implicate Mr. Shor in alleged criminal acts.

      Over the weekend as part of its re-review of its files, the Government for the first time disclosed a proposed allocution for Mr. Dinucci that the Government asked to review and which was provided by his counsel, ███████████████████████████████████████████████████████████████. As with Mr. Majidi, after the Government's apparent tinkering, Mr. Dinucci allocuted in a manner that went well beyond the elements of the charged offenses and inculpated Mr. Shor with factual claims that did not appear in Mr. Dinucci's proposed allocution. The proposed allocution included ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ With respect to Mr. Majidi and Mr. Dinucci, the proposed allocutions would never have seen the light of day but for the *Brady/Giglio* issues that have arisen before and during trial and defense counsel's repeated efforts to ensure compliance with the Government's constitutional obligations.

      In light of the recent disclosures, Mr. Shor intends to question Mr. Majidi and Mr. Dinucci regarding the sudden changes in their plea allocutions. If, however, the witnesses are not familiar with the chronology of events and perhaps in addition to the testimony, we may seek to call as witnesses counsel for Mr. Majidi and Mr. Dinucci to testify about the Government's

apparent efforts to influence the relevant plea allocutions to avoid witness statements that could be helpful to Mr. Shor and instead to include statements that are distinctly unhelpful to him. We also respectfully request that the Court consider appropriate remedies for the Government's continued late disclosures (often shortly before imminent discovery by the defense through other means), including the provision of an adverse inference jury instruction during trial regarding the Government's untimely production of these materials. We propose such an instruction below.

### A. The Government Failed to Produce *Brady/Giglio* Materials regarding Mr. Majidi's Proposed Plea Allocution

As the Court is aware, on June 5, 2019 or two days into trial, the Government disclosed a proposed plea allocution for one of its cooperating witnesses, Amin Majidi, prepared by his counsel. (Ex. A.) Mr. Majidi's counsel sent the proposed allocution to the Government on October 29, 2018 for the Government's review. (*Id.*) On the evening of June 6, 2019, Defendants received a production of documents from Mr. Majidi's counsel, Clayman & Rosenberg, in response to a Rule 17 subpoena served by defendant Anilesh Ahuja. Clayman & Rosenberg apparently made a parallel production to the Government, and later that evening we received an identical production from the Government. The June 6, 2019 production contained, among other things, the October 29, 2018 proposed plea allocution and a cover email from his attorney to the Government. The production also contained ███████████████████████████████████████████████████████████████████████████████████████████████████████████ (Ex. B.) The next day, on October 31, 2018, Mr. Majidi appeared before Your Honor to formally enter his guilty plea. (Ex. C.)

As seen in the attached redline (Ex. D), the plea allocution that Mr. Majidi delivered to Your Honor on October 31, 2018 was materially different than the one he proposed to the Government through counsel on October 29, 2018. Most fundamentally, Mr. Majidi's proposed allocution ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- ███████████████████████████████████████████████████
- ███████████████████████████████████████████████████
- ███████████████████████████████████████████████████

Hon. Katherine Polk Failla
Page 3

But when Mr. Majidi came before Your Honor on October 31, 2018, he allocated to the charged offenses in a very different manner. He scrupulously avoided making any of the factual statements that aligned with Mr. Shor's long-known defense (Mr. Shor proffered and his counsel made detailed presentations to the Government). ███████████████████ ███████████████████████████████████████████████████████████ (Ex. C at Tr. 31:15-32:10.) Mr. Majidi's statements that he had ███████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████ *Id.* at Tr. 32:6-7; Ex. D.)

A fair inference from these documents (perhaps the only fair inference) is that the Government conveyed a message to Mr. Majidi's counsel that the proposed allocution should be revised to eliminate portions that would have been favorable to Mr. Shor and inconsistent with the Government's theory of the prosecution, and to replace them with statements that aligned with the Government's prosecution theory and undercut Mr. Shor's defense. As the Court noted in open court, the materials surrounding this episode should have been disclosed to the defense well before trial—not two days into it. But more concerning is the fact that these materials would not have been produced if defense counsel had not subpoenaed Mr. Majidi's lawyers.

B.   **This Weekend, the Government Disclosed Documents Revealing a Nearly Identical Situation with Revisions to Mr. Dinucci's Proposed Plea Allocution**

On Friday night, June 7, 2019, the Government produced, among other things, a proposed plea allocution for another cooperating witness, Frank Dinucci. (Ex. E.) The proposed allocution is undated and was produced without a cover email, but the metadata associated with the document indicates that it was created on April 5, 2017, which is the day before Mr. Dinucci entered his guilty plea before Judge Hellerstein on April 6, 2017. (Ex. F.) As with Mr. Majidi's draft plea allocution, Mr. Dinucci's proposed allocution ████████████████████████ ████████████████ Mr. Dinucci's proposed allocution ██████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████ (Ex. E.) The following day, Mr. Dinucci allocuted referencing a significantly different time frame for his misconduct. He told Judge Hellerstein that the criminal conduct ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ These changes can be seen in the attached redline. (Ex. G.)

Last night, the Government made additional *Triumph Capital* disclosures. Included in that production was ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ Mr. Dinucci then delivered a

materially different allocution on April 6, 2017. As with the disclosures surrounding Mr. Majidi's proposed plea allocution, the fair inference from these documents is that the Government conveyed a message to Mr. Dinucci's counsel that the proposed allocution should be revised to eliminate portions that would have been favorable to Mr. Shor and inconsistent with the Government's theory of the prosecution, and to replace them with statements that aligned with the Government's prosecution theory and undercut Mr. Shor's defense. ███████████████████████████████████████████████████████████████████████████████████████████

As we explained in our opening statement on behalf of Mr. Shor, "in the second half of 2015," when the market worsened and PPI's "pricing started to make Jeremy uncomfortable," Mr. Shor "took action that is completely inconsistent with the government's entire theory of this case" by, among other things, "disobey[ing] Majidi's order . . . and wr[iting] down the book of securities by $16 million," "working on the implementation of a third-party pricing source," and going "to Premium Point's newly hired compliance officer." (Trial Tr. 188:18, 189:15-19, 190:21-23, 192:9-10, 193:4-5.) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### C. Mr. Shor Should Be Permitted to Present Testimony and Evidence Concerning the Alterations to the Plea Allocutions

A fair reading of these documents suggests that the Government took active steps to review and then to revise the plea allocutions of Mr. Majidi and Mr. Dinucci. The reviews were not simply to ensure that the proposed allocutions satisfied the elements of the charged offenses; indeed, both proposed allocutions easily did. Rather, the Government seemingly suggested revisions—both times orally—that eliminated *Brady/Giglio* information for Mr. Shor and cut statements that would be used to impeach the Government's theory of prosecution. The revisions and the surrounding circumstances are relevant not only to Mr. Majidi's and Mr. Dinucci's "partiality" towards the government, which is "subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony,'" *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (quoting 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970)), but also to the degree to which the Government interfered with the truth-seeking function of the trial. Accordingly, Mr. Shor intends to question Mr. Majidi and Mr. Dinucci about these incidents, and will likely seek to call their respective attorneys to testify as to any Government-requested and/or Government-directed alterations to the proposed allocutions. Mr. Shor may also seek to offer into evidence the draft and final allocutions as well as the emails between the cooperators' lawyers and the Government concerning those changes.

### D. The Court Should Give an Adverse Inference Instruction Regarding the Materials Related to the Majidi and Dinucci Plea Allocutions

Hon. Katherine Polk Failla
Page 5

      As the Court has already found (and the Government largely conceded), the Majidi proposed plea allocution and related emails should have been timely disclosed under *Triumph Capital*, 544 F.3d at 161-65. (Trial Tr. 468:9-22, 469:15-470:14-16.) They were not. Mr. Majidi's proposed allocution and related emails were produced only after Mr. Ahuja subpoenaed Mr. Majidi's counsel seeking communications with the Government. The October 30, 2018 email from the Government to Mr. Majidi's counsel was produced by the Government only after Mr. Majidi's counsel had produced it to Defendants and the Government in response to that subpoena. And Mr. Dinucci's proposed plea allocution with related emails was produced to Defendants only after the Court ordered the Government to scour its files once again and produce documents subject to disclosure under *Triumph Capital*. All of these documents were produced after trial had already begun.

      In light of the belated nature of these disclosures, and in consideration of the numerous other belated *Brady* and *Giglio*-related disclosures in this case, we respectfully ask that the Court consider appropriate relief, including the issuance of the proposed adverse inference instruction during trial regarding the Government's failure to turn over the proposed allocutions and related correspondence in a timely manner:

> I am instructing you that under our Constitution, as it has been interpreted by the Supreme Court, the Government is required to produce in a timely manner information and materials that may tend to exculpate a defendant, meaning evidence that goes towards negating a defendant's guilt. The Court has determined that Defendants Exhibits [*to be provided*], which have been received into evidence, constitute materials that were required to be produced in a timely fashion. I am instructing you that the Government did not produce those documents to Defendants until after this trial had begun and only after Defendant's counsel subpoenaed Mr. Majidi's lawyers for these materials and the Court ordered that other materials be located and produced. I am instructing you that you may, but need not, draw an adverse inference against the Government based on its failure to produce this evidence in a timely manner, and that you may infer that the timely disclosure of these materials to the Defendants would have been helpful to their defense.

* * *

      We thank the Court for its time and consideration of this matter.

Respectfully submitted,<br><br>Daniel S. Ruzumna

cc: Counsel of Record