## Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

June 29, 2019

Daniel S. Ruzumna
Partner
(212) 336-2034
druzumna@pbwt.com

**By ECF**

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

> Re:  *United States v. Anilesh Ahuja, et al.,*
>         **18 Cr. 328 (KPF)**

Dear Judge Failla:

We write on behalf of defendant Jeremy Shor to request the Court's permission to introduce a single recorded statement made by Amin Majidi to Mr. Shor on December 22, 2015. Mr. Majidi's statement is relevant to Mr. Shor's state of mind as to why Mr. Shor continued to work at Premium Point Investments ("PPI") following his meeting with the Chief Compliance Officer on December 15, 2015; specifically, the statement constitutes evidence that Mr. Shor was led to believe that the pricing practices at PPI were going to improve.

We seek to introduce the recording through cross examination of Evan Jay by playing a portion of the audio (the statement by Mr. Majidi and the preceding non-substantive statement by Mr. Shor to identify him as the other participant in the conversation) to Mr. Jay who we believe will be able to identify the voices on the recording. Once verified, we seek to play Mr. Majidi's statement in open court. We would play the approximately one-minute clip from the December 22, 2015 conversation during our cross examination of Mr. Jay:

> [SHOR:    You have a vacation coming; I'm starting vacation on
>                 Thursday, I'm in tomorrow… (*to Mr. Jay only*)]
>
> MAJIDI:    I mean even, even, even, even, even, you know, it's, w-, w-,
>                 what kills me is that all that, you know, I, I have the ability to, I
>                 think to be human and, and fair about things and you know and
>                 see positivity in stuff.
>
>                 Like, even, even, like even the conversation you, you had with,
>                 with Evan, which, you know, one level, and you know I see
>                 you sitting there with the compliance guy, my, my, I'm pins
>                 and needles, and, s-, stomach acid is going crazy, then I get

The Hon. Katherine Polk Failla
June 29, 2019
Page 2

> pulled into a three-hour meeting when I was coming out and
> joking and thanking and dreaming of sushi, I see positives
> come out of that. We, we fixed one trade, we show we're
> making an effort, we'll clean up the book, mark it down for the
> end of the year. So I'm appreciative of something that caused
> me a lot of distress, I, I know there's something good will
> come out of it.
>
> So, what I'm, what I'm, again I'm disappointed that even
> despite, you know, the shitty year and stuff like that, I think
> your mindset is that we can't, we can't salvage. But, but, it's
> like, shit, these, these things are, these careers and relationships
> are long term.

Mr. Majidi's statement to Mr. Shor constitutes relevant, admissible evidence for
at least two reasons.  First, Mr. Majidi's assurances—that "something good will come out of"
Mr. Shor's actions and that his actions caused PPI to "fix[] one trade" and would cause PPI to
"clean up the book" and "mark it down for the end of the year"—are relevant to Mr. Shor's state
of mind in December 2015 and thereafter because he was told that his concerns were going to be
addressed.  Through recent testimony, the Government has suggested to the jury that Mr. Shor is
guilty of the charged offenses in part because he *continued* to participate in wrongful conduct
after his meeting with Mr. Jay.  Specifically, the following testimony was elicited during the
redirect examination of Mr. Majidi:

> Q.    Is Mr. Shor talking here about going to -- AOC is where
>       Frank Dinucci worked; right?
>
> A.    Yes.
>
> Q.    What's PT short for?
>
> A.    Performance Trust.
>
> Q.    This is approximately a month after you saw him go into
>       the compliance officer's office?
>
> A.    Yes.
>
> Q.    Did Mr. Shor mark the Mortgage Credit Fund for month
>       end December 2015?
>
> A.    Yes.
>
> Q.    Did he also do so for January 2016?
>
> A.    Yes.

The Hon. Katherine Polk Failla
June 29, 2019
Page 3

(Tr. 2844: 9-16.)  The Government also suggested yesterday through redirect examination of Mr. Dinucci that reporting issues to Compliance does not obviate past or continued criminal activity. (Tr. 3699: 6-11.)  While that generally may be true, Mr. Majidi's statement is relevant to demonstrate that Mr. Shor's reporting to Mr. Jay did sufficiently raise awareness of valuation issues at PPI to a level that appeared likely to result in changes.

Mr. Majidi's statements  to Mr. Shor are "admissible as circumstantial evidence of [Mr. Shor's] state of mind" because Mr. Shor is "not basing his defense on the truth of [Mr. Majidi's] statements, but rather on the fact that they were made and that [Mr. Shor] believed them to be true."  *United States v. Kohan*, 806 F.2d 18, 22 (2d Cir. 1986); *see also United States v. Southland Corp.*, 760 F.2d 1366, 1376 (2d. Cir. 1985) ("When a declaration is admitted only to prove a relevant state of mind, it does not appear to matter . . . whether admissibility is predicated on the declaration not being hearsay because it was not offered to prove the truth of the matter asserted, FRE 801(c), or under the hearsay exception for declaration of states of mind, FRE 803(3).  Under either theory, '[a] state of mind can be proved circumstantially by statements . . . which are not intended to assert the truth of the fact being proved[.]'") (quoting 4 Weinstein, Evidence ¶ 803(2)[02], at 803-107 (1984)).  This statement is particularly relevant here given that the Government has suggested through its examinations of other witnesses that Mr. Shor's remedial actions in the second half of 2015 rang hollow because he continued to work at PPI.  Mr. Majidi's December 22, 2015 statement counters the Government's evidence in that it helps establish Mr. Shor's state of mind as to why he did not resign earlier than he did.

Second, Mr. Majidi's statements that seeing Mr. Shor meet with PPI's Chief Compliance Officer "caused [Majidi] a lot of distress" and resulted in Mr. Majidi being "on pins and needles" and his "stomach acid . . . going crazy" are admissible as prior inconsistent statements to refute Mr. Majidi's testimony in which he disputed the notion that he was "worried" by Mr. Shor's Compliance meeting.  (*See* Tr. 2799:13-22.)  Mr. Majidi's anodized statements that he was "curious" or perhaps "concerned" (Tr. 2799:13-22), downplay the significance of Mr. Shor's actions and are inconsistent with the sentiment he expressed previously.  *United States v. Agajanian*, 852 F.2d 56, 58 (2d Cir. 1988) ("statements need not be diametrically opposed to be inconsistent") (quotation marks omitted).

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

Daniel S. Ruzumna

cc:      Counsel of Record